UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PHILLIPS 66 COMPANY, et al., | CASE NO. C19-0174JLR |
| Plaintiffs, | ORDER GRANTING MOTIONS TO DISMISS |
| v. | |
| JOEL SACKS, | |
| Defendant, | |
| and | |
| ASSOCIATION OF UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, LOCAL 12-590, | |
| Intervenor. | |

# I.  INTRODUCTION

Before the court are two motions to dismiss Plaintiffs Phillips 66 Company and Manager HR Shared Services' (collectively, "Phillips 66") complaint—one filed by Defendant Joel Sacks, Director of the State of Washington Department of Labor and Industries (the "Director") (Director MTD (Dkt. # 4)), and one filed by Intervenor Association of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 12-590 ("USW Local") (USW Local MTD (Dkt. # 13)).  Phillips 66 opposes both motions.  (Resp. to Director MTD (Dkt. # 20); Resp. to USW Local MTD (Dkt. # 22).)  The Director and USW Local filed replies.[1]  (Director Reply (Dkt. # 24); USW Local Reply (Dkt. # 23).)  The court has reviewed the motions, the parties' submissions concerning the motions, the relevant portions of the record, and the applicable law.  Being fully advised,[2] the court GRANTS the Director's and USW Local's motions to dismiss and DIMISSES Phillips 66's complaint WITH PREJUDICE and without leave to amend.

# II.  BACKGROUND

The facts necessary to adjudicate this motion are not complex.  Phillips 66 does not offer its employees "sick leave"; instead, it offers its employees short and long-term disability benefits under a disability plan (the "Plan").  (Compl. (Dkt. # 1) at 3-4.)  In

---

[1] The Director and USW Local also joined each other's motions.  (*See* Director Resp. to USW Local MTD (Dkt. # 18); USW Local Resp. to Director MTD (Dkt. # 19).)

[2] None of the parties request oral argument (*see* Director MTD; USW Local MTD; Resp. to Director MTD; Resp. to USW Local MTD), and the court concludes that oral argument is unnecessary to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

2013, two Washington-based Phillips 66 employees—Rachelle Honeycutt and Gabriel Westergreen—took leave from work to care for ill family members. (*Id.* at 4.) Both employees sought to use the short-term disability benefits under the Plan to cover those absences. (*Id.* at 3-4.) Phillips 66 rejected both requests. (*Id.* at 4.)

Although this factual background is straightforward, it yielded a long-winding procedural history. After Phillips 66 denied their benefits requests, Ms. Honeycutt and Mr. Westergreen filed protected leave complaints with the Washington State Department of Labor and Industries (the "Department"). (*Id.* at 4.) Those complaints alleged that Phillips 66's benefits denials violated the Washington Family Care Act ("WFCA"), which entitles Washington employees to take leave from work to care for ill family members. (*Id.*) The Department initially found that Phillips 66 did not violate WFCA and, as such, it issued Determinations of Compliance. (*Id.*) Ms. Honeycutt and Mr. Westergreen appealed those decisions to the Whatcom County Superior Court, which affirmed the Department's decisions. (*Id.*)

The Washington Court of Appeals reversed and remanded. (*Id.* at 4-5); *see also Honeycutt v. State, Dep't of Labor & Indus.*, 389 P.3d 773 (Wash. Ct. App. 2017). Specifically, the court held that, where an employer does not offer paid leave for illness, WFCA entitles employees to access disability benefits for family care. *Honeycutt*, 389 P.3d at 778 (interpreting RCW 49.12.265(5)). Thus, if WFCA applied to Phillips 66's Plan, Ms. Honeycutt and Mr. Westergreen would be entitled to use short-term disability benefits to cover absences for family care. *Id.* at 780. The court noted, however, that WFCA exempts disability plans covered by the Employee Security Retirement Income

Security Act of 1974 ("ERISA").  *Id.*  The Department did not make findings on whether the Plan was governed by ERISA.  *Id.*  Accordingly, the court remanded the case to the Department to adjudicate that issue.  *Id.*

On remand, a Department investigator and an Administrative Law Judge both determined that the Plan is governed by ERISA.  (Compl. at 6, 9.)  But, on October 25, 2018, the Director reversed and determined that the short-term disability benefits that Ms. Honeycutt and Mr. Westergreen sought to use for family care leave did not fall under an ERISA plan.  (*Id.* at 9.)  Thus, the Director found that WFCA applied and that Phillips 66 violated WFCA by denying Ms. Honeycutt and Mr. Westergreen's benefits requests.  (*See id.*, Ex. C at 3-7.[3])  The Director assessed a $200 penalty against Phillips 66 for each violation.  (*Id.*, Ex. C at 7.)  Phillips 66 moved for reconsideration of the Director's order, but the Director denied that motion on January 8, 2019.  (*Id.*, Ex. C at 11-12.)

Phillips 66 filed the current action on February 5, 2019.  (*See* Compl.)  Phillips 66 contends that "[t]he sole issue here is whether the Plan, including its short-term disability benefit, is an ERISA Plan and, therefore, excluded from coverage under the WFCA, RCW 49.12.265(5)."  (*Id.* at 2.)  The day after filing this case, Phillips 66 filed a petition for judicial review in Whatcom County Superior Court that sought direct review of the Director's decision on Ms. Honeycutt and Mr. Westergreen's complaints (the "State Court Action").  (*See* Director MTD, Ex. B.)  Phillips 66 moved to stay the State Court Action while the current case was pending, and, on March 22, 2019, the Whatcom

---

[3] As discussed below, the court grants the parties' requests to take judicial notice of the records in the State Court Action.  *See infra* § III.B.

County Superior Court granted that motion and stayed the State Court Action "until the federal court has issued an order on Petitioner's Complaint for Declaratory Judgment and Injunctive Relief." (Birmingham Decl. (Dkt. # 21-1) ¶ 2.)

The Director filed his motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on February 28, 2019. (*See* Director MTD.) In that motion, the Director presents three challenges to Phillips 66's complaint: (1) the court is barred from granting the relief Phillips 66 seeks under the Anti-Injunction Act, 28 U.S.C. § 2283 ("AIA"); (2) the court should abstain from deciding this case under the *Younger* abstention doctrine; and (3) the court lacks subject matter jurisdiction over this case under the *Rooker-Feldman* doctrine. (*See* Director MTD at 6-13.) The Director also requests his fees. (*Id.* at 13-14.) USW Local successfully moved to intervene in this case and filed its motion to dismiss on April 4, 2019.[4] (*See* USW Local MTD.) USW Local offers three arguments in support of dismissal in its motion: (1) the Director's order that the Plan is not an ERISA plan is preclusive in this court and deprives this court of subject matter jurisdiction; (2) Phillips 66's complaint does not arise under federal law; and (3) the AIA bars the relief that Phillips 66 seeks. (*See* USW Local MTD at 7-22.) On reply, USW Local also challenged Phillips 66's standing to bring this case. (USW Local Reply at 9-10.) The court considers these arguments in turn.

//

------

[4] Although USW Local did not label its motion to dismiss, USW Local's motion presents arguments for dismissal under Rules 12(b)(1) and 12(b)(6). (*See generally* USW Local MTD at 6-22.)

# III.   DISCUSSION

## A.   Standards

### 1.   Rule 12(b)(1)

USW Local and the Director allege a number of facial attacks on the court's subject matter jurisdiction to hear this case.  (*See* USW Local MTD at 6-16; USW Local Reply at 9-10; Director MTD at 12-13.)  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).  The party asserting its claims in federal court bears the burden of establishing subject matter jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

USW Local also alleges that Phillips 66's claim is not ripe for review (*see* USW Local Reply at 9-10), which presents a Rule 12(b)(1) issue, *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." (citations omitted)).  "The ripeness doctrine is drawn both from Article III limitations on

judicial power and from prudential reasons for refusing to exercise jurisdiction."[5]  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotations omitted); *see also Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) ("Ripeness has both constitutional and prudential components.").  To satisfy the constitutional ripeness requirement, there must be a case or controversy with issues that are "definite and concrete, not hypothetical or abstract."  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citations and internal quotation marks omitted).  To evaluate prudential ripeness, courts weigh two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  *Wolfson*, 616 F.3d at 1060.  "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship[.]"  *Id.* (citations and internal quotations omitted).

//

//

---

[5] The Supreme Court has recently called the prudential ripeness doctrine into question. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) ("To the extent respondents would have us deem petitioners' claims nonjusticiable on grounds that are prudential, rather than constitutional, that request is in some tension with our recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." (citations and internal quotations omitted)).  However, because neither the Supreme Court nor the Court of Appeals for the Ninth Circuit have definitively invalidated this doctrine, the court continues to consider it here.

2.      Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When

considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith*

*Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded

facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit*

*P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court,

however, is not required "to accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.

2010). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'

. . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Dismissal

under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory or the

absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.    Requests for Judicial Notice**

As a threshold matter, the court grants the parties' requests to take judicial notice of the relevant filings in the State Court Action. (*See* Director MTD at 9; Resp. to Director MTD at 4.) The court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Under this rule, courts may take judicial notice of federal and state court proceedings, *see, e.g.*, *Shetty v. Wells Fargo Bank, NA*, 696 F. App'x 828, 829 (9th Cir. 2017), without converting a Rule 12 motion to a motion for summary judgment, *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (citations omitted). Thus, the court takes judicial notice of the filings in the State Court Action when considering the present motions to dismiss.

**C.    Subject Matter Jurisdiction**

1.    <u>Ripeness</u>

In its reply memorandum, USW Local argues that Phillips 66's claims are not ripe. (*See* USW Local Reply at 9-10.) Specifically, USW Local alleges that if the court credits Phillips 66's argument that it seeks only to enjoin future administrative proceedings (as opposed to the State Court Action), this case is not ripe.[6] (USW Local Reply at 9 ("[I]f

---

[6] Phillips 66 made this argument in response to USW Local and the Director's AIA arguments. (*See* Resp. to USW Local MTD at 8.) As discussed in more detail below, Phillips 66

this Court were to take Phillips 66 at its word that it only seeks declaratory and injunctive

relief for the purposes of precluding future proceedings, the Court must nonetheless

dismiss the claims as unripe.").)  Typically, the court declines to consider arguments

raised for the first time in reply.  *See Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n.16

(9th Cir. 2008) (declining to consider an argument raised for the first time in a reply

brief); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("We do not consider

arguments raised for the first time in the reply brief.").  Given that standing implicates the

court's subject matter jurisdiction, however, the court addresses standing at the threshold.

*See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("We must

assure ourselves that the constitutional standing requirements are satisfied before

proceeding to the merits." (citations omitted)); *Nw. Envtl. Advocates v. U.S. Dep't of

Commerce*, 322 F. Supp. 3d 1093, 1096 (W.D. Wash. 2018) ("As a threshold matter, the

Court must ensure it has subject matter jurisdiction, a key component of which is Article

III standing." (citations omitted)).

   Phillips has alleged a sufficiently concrete injury to satisfy the constitutional

ripeness requirements.  The Director ordered that "[Phillips 66's] short-term disability

plan is a payroll practice exempt from ERISA."  (Compl. Ex. C at 7.)  Phillips 66 seeks a

declaration from this court stating that the Plan is an ERISA plan.  (Compl. at 2.)  That is

a definite and concrete dispute.  The court disagrees with USW Local's argument that

---

claims that the AIA does not apply to this case because Phillips 66 does not seek to enjoin the
State Court Action.  *See infra* § III.E.2.  Instead, Phillips 66 alleges that it seeks declaratory relief
stating that ERISA applies to the Plan and injunctive relief against future administrative actions
by the Department.  *See id.*  The merits of this argument are discussed below.  *See id.*

1  Phillips 66's claim is not ripe until the Department initiates another enforcement action

2  against Phillips 66 for violation of WFCA.  (*See* USW Local Reply at 9-10.)  This is not a

3  hypothetical regulatory dispute that may impact Phillips 66 in the future.  Phillips 66

4  continues to administer the Plan, and the Director has reviewed the Plan and determined

5  that it does not fall under ERISA.  (Compl. Ex. C at 7.)  Thus, Phillips 66 must either

6  administer the Plan under WFCA in compliance with the Director's order and risk

7  depriving plan participants of ERISA benefits or flout the Director's order by

8  administering the plan under ERISA and risk violating WFCA.[7]  That puts Phillips 66 "in

9  a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."

10 *Abbott Labs.*, 387 U.S. at 152.

11      Phillips 66's claims also satisfy the prudential ripeness requirements—fitness for

12 judicial review and hardship.  First, this case is fit for judicial review.  The issue

13 presented—whether the Plan is governed by ERISA—needs no further factual

14 development.  The parties agree that no facts beyond those contained in the

15 administrative record are needed to resolve this dispute.  (JSR (Dkt. # 15) at 3 ("The

16 parties believe that no discovery is needed and that the facts of this matter are limited to

17 the Agency Record, Agency Case Number 2018-024-PL, supplemented by Agency Case

18 Number 2014-LI-0033, #000515-000687.").)  The court also agrees with USW Local that

19

20

21

    [7] That injury is particularly acute in this case given that Phillips 66 administers the Plan
22  nationwide and operates the Plan under ERISA in other jurisdictions.  (*See* Compl. at 13-14.)

the Director's order is a "final agency action."[8]  *See Ass'n of Am. Med. Colleges v.*

*United States*, 217 F.3d 770, 780 (9th Cir. 2000) (internal quotations omitted) ("Agency

action is fit for review if the issues presented are purely legal and the regulation at issue

is a final agency action.").  And, as noted above, given that Phillips 66 continues to

administer the Plan and is now subject to a final agency order concluding that the Plan is

not subject to ERISA, there will be hardship to Phillips 66 if this dispute is not promptly

resolved.

In sum, the court finds that Phillips 66's requests for declaratory and injunctive

relief satisfy both the constitutional and prudential requirements for ripeness.

2.      Additional 12(b)(1) Arguments

Although the court finds that Phillips 66 has standing to bring this claim, the

Director and USW Local offer three additional arguments challenging the court's subject

matter jurisdiction.  First, USW Local argues that the court has subject matter jurisdiction

under ERISA only if the Plan is an ERISA plan, and the Director's decision that the Plan

is not an ERISA plan is res judicata or entitled to preclusive effect in this action.  (USW

Local MTD at 9 ("[A]bsent an ERISA plan, § 1132(a) does not provide a basis for

---

[8] Under Washington law, an agency action is deemed "final" when it "imposes an obligation, denies a right, or fixes a legal relationship as a consummation of the administrative process."  *Bock v. State*, 586 P.2d 1173, 1176 (Wash. 1978).  The Director's order is the last word by the Department on Ms. Honeycutt and Mr. Westergreen's claims and the ERISA interpretation issue presented in this case.  *See* WAC 296-130-070(8) ("The director . . . will serve the final decision on all parties.").  The fact that Phillips 66 appealed that order in the State Court Action does not mean that the order is not "final" as far as the agency is concerned.  *See Jones v. State, Dep't of Health*, 242 P.3d 825, 835 (Wash. 2010) ("A final agency action implies a definitive act of the agency, action which is binding until and unless it is set aside by a court." (citations and internal quotations omitted)).

subject matter jurisdiction.").)  As such, according to USW Local, the court has no choice but to dismiss for lack of subject matter jurisdiction.  (*Id.* at 9-13.)  Second, USW Local alleges that Phillips 66's claim does not arise under federal law under the well-pleaded complaint rule.  (*Id.* at 13-16.)  Third, the Director alleges that the court lacks jurisdiction under the *Rooker-Feldman* doctrine.  (Director MTD at 12-13.)  The court addresses each of these arguments below.

First, USW Local's res judicata argument is unavailing because that argument does not bear on the court's subject matter jurisdiction.  Even if USW Local is correct that the Director's decision is entitled to preclusive effect, the existence (or lack thereof) of an ERISA plan is a threshold factual issue that goes to the merits of Phillips 66's claims under ERISA, not the court's subject matter jurisdiction.[9]  The court recognizes that there is caselaw in the Ninth Circuit supporting USW Local's argument that the status *vel non* of an ERISA plan is a jurisdictional issue.  *See, e.g.*, *Delaye v. Agripac, Inc.*, 39 F.3d 235, 238 (9th Cir. 1994) ("Because Delaye's employment contract is not a 'plan' governed by ERISA, his claim that his contract was breached does not present a federal question.  The district court lacked jurisdiction to resolve this dispute.").  But the continuing validity of that conclusion is doubtful in light of the Supreme Court's holding in *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006).

The *Arbaugh* Court noted that this area of the law—which the Court termed the "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy"—is one that has

---

[9] The court addresses the merits of USW Local's preclusion arguments below.  *See infra* § III.D.

caused no shortage of consternation. 546 U.S. at 511 ("Judicial opinions . . . often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim."). To help draw the line between jurisdictional issues and questions that go to the merits, the Court articulated the following bright line rule:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. . . . But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* at 515-16 (citations omitted).

A number of courts have applied the *Arbaugh* rule to ERISA and concluded that the question of whether a benefits plan falls under ERISA is not jurisdictional. *See Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, 744 F.3d 623, 629 (10th Cir. 2014) ("[R]ecent Supreme Court decisions compel the conclusion that the existence of a benefit plan subject to ERISA is not a jurisdictional requirement but an element of a claim under ERISA."); *Daft v. Advest, Inc.*, 658 F.3d 583, 590-91 (6th Cir. 2011) ("Therefore, in light of *Arbaugh* and its progeny, the existence of an ERISA plan must be considered an element of a plaintiff's claim . . . not a prerequisite for federal jurisdiction."). While the Ninth Circuit has not been presented with this specific question post-*Arbaugh*, it has recently recognized that a similar threshold ERISA question went to the merits of the plaintiff's claim. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 979 (9th Cir. 2012) (holding that, due to "intervening Supreme Court

precedent," questions pertaining to participant status under ERISA "go[] to the merits of [the plaintiff's] claim and not to the subject matter jurisdiction of the district court"). In light of *Arbaugh*, *Leeson*, and recent decisions from other circuits, at least one other court in this circuit has considered whether *Delaye* is still good law and determined that "the fact that the plan at issue is not ERISA qualifie[d] means that plaintiff's claims fail on the merits, but does not deprive the court of subject matter jurisdiction." *See McVey v. McVey*, 26 F. Supp. 3d 980, 993-95 (C.D. Cal. 2014).

The court agrees with the decisions in *Dahl*, *Daft*, and *McVey*. Phillips 66 has pleaded a colorable claim arising under 29 U.S.C. § 1132(a)(3) by alleging that the Plan is covered by ERISA. To prevail on that claim, Phillips 66 must prove that the Plan is, in fact, covered by ERISA. But nothing in ERISA states that the existence of an ERISA plan is a jurisdictional pre-requisite for a § 1132 claim. Instead, as a growing number of courts have concluded, that question goes to the merits of an ERISA plaintiff's claim. *See, e.g.*, *Dahl*, 744 F.3d at 629; *Daft v. Advest, Inc.*, 658 F.3d at 590-91; *McVey*, 26 F. Supp. 3d at 995. As such, USW Local's preclusion argument does not deprive the court of subject matter jurisdiction, but the court will still consider the merits of USW Local's preclusion argument under Rule 12(b)(6). *See infra* § III.D.

USW Local's second jurisdictional argument—that Phillips 66's claim does not arise under federal law under the well-pleaded complaint rule (USW Local MTD at 13-

16)—misconstrues Phillips 66's complaint.[10]  Phillips 66 is not asking the court to "bless its affirmative defense to purely state law claims."  (USW Local MTD at 15.)  Instead, Phillips 66 seeks declaratory relief stating that the Plan is covered by ERISA and injunctive relief requiring the Department to construe the Plan as an ERISA plan. (Compl. at 13-14.)  ERISA explicitly grants Phillips 66, as the fiduciary of the Plan, the authority to bring such an action.  *See* 29 U.S.C § 1132(a)(3)(B)(ii) ("A civil action may be brought . . . by a . . . fiduciary . . . to obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan.").  That statutory grant of authority is sufficient to cloak this action with federal question jurisdiction under 28 U.S.C. § 1331.  Further, in addition to federal question jurisdiction, ERISA contains a statutory grant of jurisdiction that applies to this action.  29 U.S.C. § 1132(e)(1) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title.").  These two statutes provide the court with subject matter jurisdiction over this case.  The fact that Phillips 66's requested relief may be relevant to a pending state court action has no bearing on whether Phillips 66 presents a federal question under 28 U.S.C. § 1331 or an ERISA claim under 29 U.S.C. § 1132.

---

[10] USW Local also notes, correctly, that the Declaratory Judgment Act cannot confer jurisdiction over Phillips 66's claims.  (USW Local MTD at 13-14.)  But Phillips 66 has not alleged that the court has jurisdiction based on the Declaratory Judgment Act.  (*See* Compl. at 2.)

Finally, contrary to the Director's argument (Director's MTD at 12-13), the *Rooker-Feldman* doctrine is inapplicable to this case. "[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). *Rooker-Feldman* does not apply to decisions of administrative agencies like the Director's order. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 644 (2002) ("The [*Rooker-Feldman*] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency."). And even if the doctrine could apply to agency action, state court litigation must be concluded for *Rooker-Feldman* to apply. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Here, the State Court Action is ongoing. Finally, Phillips 66 is not appealing the Director's order on Ms. Honeycutt and Mr. Westergreen's complaints; it is seeking a declaration that the Plan falls under ERISA. Although this case and the State Court Action present essentially identical questions, that is not an impediment to federal jurisdiction under the *Rooker-Feldman* doctrine because Phillips 66 has filed an "independent claim" in this case. *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011) ("Skinner's litigation, in light of *Exxon*, encounters no *Rooker-Feldman* shoal. If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." (citing *Exxon*, 544 U.S. at 292-93) (internal quotation marks omitted)).

**D.     Issue Preclusion**

As noted above, USW Local's preclusion argument does not bear on the court's jurisdiction to hear this case.  *See supra* § III.C.2.  But if USW Local is correct that the Director's order is entitled to preclusive effect, then Phillips 66 has failed to state a claim for which relief can be granted under Rule 12(b)(6).  Thus, the court construes USW Local's preclusion claim as a Rule 12(b)(6) motion to dismiss and considers USW Local's argument in light of that standard.

USW Local argues that the Director's order in the State Court Action is res judicata in this case.  (*See* USW Local MTD at 10-13.)  The term "res judicata" encompasses two preclusion doctrines—claim preclusion and issue preclusion.  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'").  USW Local does not specifically identify which preclusion doctrine it seeks to apply, but it is clear from the context of USW Local's argument that issue preclusion is the relevant doctrine.  USW Local argues that the Director has already resolved the key issue in this case—whether the Plan is an ERISA plan.  (USW Local MTD at 10 ("[T]he Director previously determined that the STD Plan is a payroll practice, and . . . that decision enjoys preclusive effect from collateral attack in these proceedings.").)  That is an issue preclusion argument.[11]  *Taylor*, 553 U.S. at 892 (2008) ("Issue preclusion . . .

---

[11] Claim preclusion forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."  *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001).  That doctrine is inapplicable here because Phillips 66's claim for

bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." (quoting *New Hampshire*, 532 U.S. at 748-49)).

Federal courts must give the same preclusive effect to state court judgments as would be given in the courts of that state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). This rule can apply to state agency fact finding. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) ("[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966))). Thus, the key question is whether the Director's order is entitled to preclusive effect under Washington law.[12]

In Washington, seven factors must be met in order to give preclusive effect to agency fact finding—four generally applicable issue preclusion factors and three that are specific to agency fact finding. First, for issue preclusion to apply to any Washington findings—from an agency or otherwise—the party seeking to apply preclusion must establish that:

---

declaratory and injunctive relief in this case is not the "very same claim" as Ms. Honeycutt and Mr. Westergreen's claims for benefits in the State Court Action.

[12] Washington courts often use the terms "issue preclusion" and "collateral estoppel" interchangeably. *See, e.g.*, *Christensen v. Grant Cty. Hosp. Dist. No. 1*, 96 P.3d 957, 960 (Wash. 2004). For purposes of this order, however, the court follows the *Taylor* Court's guidance and uses the term "issue preclusion."

(1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen*, 96 P.3d at 961 (citations omitted).  Three additional factors must be considered before granting preclusive effect to agency findings:  "(1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations."  *Id.* at 961-62 (citations omitted).

As a threshold matter, the court rejects Phillips 66's argument that issue preclusion cannot apply to the Director's order because the key question—whether the Plan is an ERISA plan—is a mixed issue of fact and law.  (Resp. to USW Local MTD at 2-3.)  Phillips 66 is wrong that the ERISA status *vel non* of the Plan is a mixed question of fact and law.  Although Washington does not appear to have weighed in on this question, it is well-settled in this circuit that "[t]he existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person."  *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1149 (9th Cir. 2000) (quoting *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 (9th Cir. 1998)); *see also Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 913 (9th Cir. 1997).  Thus, the Director's finding that the Plan was not governed by ERISA was a factual conclusion that may be appropriate for issue preclusion if the other requirements

for preclusion are met.[13]  *See Steen* 106 F.3d at 913-14 (noting that finding that "a plan is an ERISA plan is a finding of fact," which meant that collateral estoppel could be applied to prior finding that a plan was not an ERISA plan).

Of the seven issue preclusion factors, Phillips 66 disputes only three:  (1) whether the Director's order constitutes a "judgment on the merits," (2) whether the Department acted within its area of competence, and (3) whether public policy considerations weigh in favor of denying preclusive effect.  (*See* Resp. to USW Local MTD at 4.)  The court agrees that the other factors are met.  The key issue in this case is the same as the issue in the State Court Action—whether the Plan is an ERISA plan; Phillips 66 was a full participant in the State Court Action; there is no apparent procedural injustice that would result from application of issue preclusion in this case; and there were no meaningful differences between the Department's adjudicatory procedures and the procedures available in this court.  Thus, each of these requirements for issue preclusion are met, and the court focuses its analysis on the three disputed factors.

First, the Director's order is a judgment on the merits.  Phillips 66 argues that the Director's order is not final and, as such, cannot be preclusive because Phillips 66

---

[13] Moreover, even if Phillips 66 was correct that ERISA status is a mixed question of fact and law, Phillips 66 cited no authority in support of its argument that prior determinations on mixed questions of fact and law are not entitled to preclusive weight.  In fact, persuasive federal authority holds that "[p]reclusion generally is appropriate if both the first and second action involve application of the same principles of law to an historic fact setting that was complete by the time of the first adjudication."  *See Steen* 106 F.3d at 913 n.5 (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4425 (Supp. 1996)).  Absent Washington authority on point, the court sees no reason to adopt a *per se* rule that an agency determination that otherwise meets the requirements for issue preclusion is not entitled to preclusive effect simply because the determination involved a mixed question of law and fact.

appealed that order to the Whatcom County Superior Court.  (Resp. to USW Local MTD at 4.)  Not so.  As the court noted in its ripeness analysis, the Director's order is final agency action.  *See supra* § III.C.1.  The fact that Phillips 66 has appealed that decision has no impact on the issue preclusion analysis.  *See Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 956 P.2d 312, 361 (Wash. 1998) ("In this state an appeal does not suspend or negate the res judicata or collateral estoppel aspects of a judgment entered after trial in the superior courts."); *Lejeune v. Clallam Cnty.*, 823 P.2d 1144, 1148-49 (Wash. Ct. App. 1992) ("[A] judgment or non-interlocutory administrative order becomes final for res judicata purposes at the beginning, not the end, of the appellate process, although res judicata can still be defeated by later rulings on appeal.").

Second, the Department acted within its area of competence in deciding that the Plan was not an ERISA plan.  Phillips 66's alleges that "the Department did not act within its area of competence when it held that federal law required [the Plan] to be artificially bifurcated into two component plans."  (Resp. to USW Local MTD at 4.)  This argument views the scope of the Department's decision too narrowly.  Although the Department ultimately made a factual determination that the Plan was not an ERISA plan—which is, admittedly, a federal issue—it did so in the context of resolving Washington employment disputes that are well within the Department's purview.

The State Court Action began with protected leave complaints filed by Ms. Honeycutt and Mr. Westergreen that alleged violations of WFCA.  (*See* Compl. at 4.) The Department was indisputably within its authority to adjudicate those complaints. The Department is statutorily authorized to "administer and investigate violations of

1    [WFCA]." RCW 49.12.280. And the Director, as the head of the Department, is

2    authorized to "supervise the administration and enforcement of all laws respecting the

3    employment and relating to the health, sanitary conditions, surroundings, hours of labor,

4    and wages of employees employed in business and industry in accordance with the

5    provisions of chapter 49.12 RCW." RCW 43.22.270(4). Thus, as Phillips 66 put it, "as

6    the Department's Director, Mr. Sacks has the power to enforce the WFCA." (Compl. at

7    4.) WFCA states that employees are entitled to use "sick leave or other paid time off" to

8    care for sick family members. RCW 49.12.270(1). But plans that are covered by ERISA

9    are specifically exempted from WFCA's definition of "[s]ick leave or other paid time

10   off." RCW 49.12.265(5)(a). In order for the Department to exercise its statutory

11   directive to police WFCA, it had to determine whether the Plan was an ERISA plan.[14]

12   Thus, the Department's decision on that issue flowed from its statutory mandate and was

13   within its competence for purposes of issue preclusion.

14        The fact that federal courts are vested with exclusive jurisdiction to adjudicate

15   Phillips 66's 29 U.S.C. § 1132(a)(3) claim does not change the result. To argue

16   otherwise confuses claim and issue preclusion. Washington courts have held that, so

17   long as agency factfinding is done within the agency's area of expertise, the fact that the

18   agency's conclusions impact state or federal claims beyond the agency's authority does

19   not mean that the agency acts outside its competence. *See Christensen*, 96 P.3d at 967-

20

21        [14] Indeed, the Washington Court of Appeals explicitly recognized that the Department
     needed to make this decision in the first instance. *See Honeycutt v. State, Dep't of Labor &
22   Indus.*, 389 P.3d 773, 780 (Wash. Ct. App. 2017).

68; *Shoemaker v. City of Bremerton*, 745 P.2d 858, 863 (Wash. 1987). In *Christensen*,

for example, the Washington Supreme Court held that Washington's Public Employment

Relations Commission ("PERC") was competent to determine that an employee was not

discharged because of union activities even though PERC had no authority to resolve tort

claims of wrongful discharge that arose in a separate action. 96 P.3d at 967-68.

Similarly, in *Shoemaker*, the Washington Supreme Court held that the Bremerton Civil

Service Commission's factual determination that a public employee's demotion was not

retaliatory was entitled to preclusive effect even though that determination precluded the

employee's 42 U.S.C. § 1983 civil rights claim in another action. 745 P.2d at 863. In

both cases, the agency was not competent to resolve the claim that arose in the second

proceeding, but the factual determination at issue was well within the agency's

competency, meaning that the agency's determination on that issue was preclusive.

*Christensen*, 96 P.3d at 967 ("This case involves issue prelusion, and the same issue is

involved, *i.e.*, whether Samaritan discharged Christensen in retaliation for his union

activity. It does not matter that the claim or cause of action that Christensen seeks to

pursue in superior court is not the same claim or cause of action that was decided by

PERC, or that PERC lacks authority to decide the tort claim[.]"); *Shoemaker*, 745 P.2d at

863 ("The fact that the issue determined is also a central element in the federal civil rights

claim does not mean . . . that the Commission has acted beyond its competence.");

The same is true here. Although federal courts have exclusive jurisdiction over

Phillips 66's claim, the Department did not adjudicate Phillips 66's claim and USW

Local does not seek to apply claim preclusion. Instead, as part of its WFCA analysis, the

Department determined that the plan is not an ERISA plan and USW Local seeks to

apply issue preclusion to that decision. As discussed above, WFCA required the

Department to rule on that issue in order to adjudicate Ms. Honeycutt and Mr.

Westergreen's complaint. *See* RCW 49.12.280 (granting the Department authority to

"administer and investigate violations of [WFCA]"); RCW 49.12.265(5)(a) (defining

"[s]ick leave or other paid time off" to exclude plans covered by WFCA). And nothing

in ERISA precludes the Department from ruling that the Plan was not an ERISA plan. In

fact, state courts have concurrent jurisdiction to determine the status of an ERISA plan.[15]

*See Int'l Ass'n of Entrepreneurs of Am. v. Angoff*, 58 F.3d 1266, 1269 (8th Cir. 1995)

(concluding that states have concurrent jurisdiction to determine whether a benefits plan

is an ERISA plan); *Knapp v. Cardinale*, 963 F. Supp. 2d 928, 933 (N.D. Cal. 2013)

(same). Although the court is aware that the Department is not a state court, Washington

state courts are entitled to review the Department's WFCA adjudications under the

procedures of Washington's Administrative Procedure Act. *See* RCW 34.05.510

(establishing authority for judicial review of agency action); RCW 34.05.570(3) (setting

forth standards for judicial review of agency orders); RCW 34.05.26 (noting that

appellate review is available for "any final judgment of the superior court under this

chapter").

---

[15] Although the Ninth Circuit has not yet weighed in on the issue of state court authority to adjudicate the status *vel non* of an ERISA plan, our circuit has held that states have authority to adjudicate ERISA preemption issues, which requires an inquiry into ERISA status. *See, e.g.*, *Delta Dental Plan of Cal., Inc. v. Mendoza*, 139 F.3d 1289, 1296-97 (9th Cir. 1998) *disapproved of on other grounds by Green v. City of Tucson*, 255 F.3d 1086 (9th Cir.2001).

1   Ultimately, the Department is well within its area of competence to adjudicate two

2   Washington employees' claims that their employer violated Washington statutory

3   employment law by denying their claims for sick leave to care for family members.  As

4   part of that adjudication, the Department resolved a factual dispute regarding whether the

5   Plan was an ERISA plan.  But the Department's resolution of a federal issue that closely

6   relates to the central state question before the Department does not change the

7   competency calculus.  If this court were to hold otherwise, then the Department's

8   adjudicatory authority would be rendered gutless in any situation in which the ERISA

9   exemption in RCW 49.12.265(5)(a) debatably applied to a benefits plan.  Absent a

10  federal court decision that an applicable benefits plan was not an ERISA plan, any

11  Department decision on a WFCA complaint for denial of "sick leave or other paid time

12  off" to care for sick family members could be relitigated in federal court.  Such a result

13  would be contrary to the Department's statutory directive in RCW 49.12.280 to

14  "administer and investigate" violations of WFCA.

15      Finally, public policy does not warrant denying issue preclusion to the Director's

16  order.  To the contrary, WFCA evinces a strong public policy in favor of allowing the

17  Department and the Washington court system to adjudicate Washington employees'

18  claims that their employers wrongfully withheld sick leave to care for family members.

19  In enacting WFCA, the Washington legislature announced a strong policy in favor of

20  providing Washington employees with sick leave to care for family members:

21          The legislature recognizes the changing nature of the workforce brought
            about by increasing numbers of working mothers, single parent households,
22          and dual career families.  The legislature finds that the needs of families must

be balanced with the demands of the workplace to promote family stability and economic security. The legislature further finds that it is in the public interest for employers to accommodate employees by providing reasonable leaves from work for family reasons. In order to promote family stability, economic security, and the public interest, the legislature hereby establishes a minimum standard for family care.

Family Leave, ch. 236, Sec. 1, 1988 Wash. Sess. Laws. 1094, http://leg.wa.gov/Code Reviser/documents/sessionlaw/1988pam1.pdf. To help enforce this public policy, the Washington legislature deputized the Department to police the bounds of WFCA. RCW 49.12.280. The court will not interfere with that legislative decision by refusing to cloak the Department's decisions with preclusive effect.[16]

Although each of the factors for issue preclusion are met, Phillips 66 claims that application of issue preclusion means that this court can position itself in the shoes of the Whatcom County Superior Court and review the Director's decision. (Resp. to USW Local MTD at 4-5.) Again, Phillips 66 misinterprets issue preclusion law. The well-established principle that federal courts must give the same preclusive effect to state court judgments as would be given in the courts of that state, *see, e.g.*, *Migra*, 465 U.S. at 81, simply means that the court applies the state's preclusion law in determining whether a decision arising from that state is entitled to preclusion. *See, e.g.*, *Fowler v. Guerin*, 899 F.3d 1112, 1119 (9th Cir. 2018) (applying Washington preclusion law to determine

---

[16] Phillips 66's only articulated public policy ground for denying issue preclusion in this case is its claim that ERISA plans should be treated uniformly across jurisdictions, which requires that federal courts decide whether a plan is an ERISA plan. (Resp. to USW Local at 4.) This argument is not persuasive. The court will not assume, as Phillips 66 does, that allowing state agencies and state courts to adjudicate ERISA status will yield an increase in incongruent results. But even if it did, that would not outweigh Washington's interest in WFCA and having the Department enforce WFCA's bounds.

whether the decision of a Washington agency that was affirmed by the Washington Court of Appeals was entitled to issue preclusion). That rule does not mean that federal courts can invade the province of state courts to sit in direct review of agency decisions.[17]

Ultimately, the court concludes that issue preclusion applies to the Director's decision that the Plan is an ERISA plan. The not-so-subtle subtext behind Phillips 66's complaint and its arguments in opposition to the preclusive effect of the Director's decision is Phillips 66's fear that the Director's decision was erroneous. (*See* Compl. at 9-13; Resp. to USW Local MTD at 5 ("In the instant case, Phillips 66 alleges the Director erroneously applied federal law when he artificially bifurcated the Plan into two plans—a short-term disability plan and a long-term disability plan. In addition, the Director's determination that there are two component plans is not supported by **any** evidence in the administrative records, let alone 'substantial evidence.'").) But even assuming Phillips 66's fear is well-founded, erroneous decisions are still entitled to issue preclusion. *See Thompson v. State, Dep't of Licensing*, 982 P.2d 601, 610 (Wash. 1999) ("[W]here . . . a party to the prior litigation had a full and fair hearing of the issues . . . collateral estoppel may apply, notwithstanding an erroneous result."); *Richey v. U.S. I.R.S.*, 9 F.3d 1407, 1412 (9th Cir. 1993) ("[I]t is only an intervening change in the law that defeats collateral estoppel—the correctness of a prior ruling, even if based upon an erroneous application of the law, is irrelevant." (citations omitted)). Phillips 66 still has ample opportunity to

---

[17] Indeed, such a rule would seemingly eviscerate *Rooker-Feldman*'s directive that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *See Lance*, 546 U.S. at 463.

raise its grievances in the State Court Action.  But the doctrine of issue preclusion

dictates that it may not relitigate the Director's order in this court, which means that

Phillips 66 has not stated a claim on which relief can be granted.  Accordingly, USW

Local's motion to dismiss must be granted and this case must be dismissed.

**E.    *Younger* Abstention and the Anti-Injunction Act**

Although the court's conclusion that the Director's order is preclusive is sufficient

to dismiss this action, the court will also address the *Younger* abstention arguments raised

by the Director (Director MTD at 8-12) and the AIA arguments raised by the Director

and USW Local (*id.* at 6-7; USW Local MTD at 16-22).  For the reasons set forth below,

the court finds that, even if the Director's order was not preclusive, dismissal would still

be warranted under *Younger* and the AIA.

1.    *Younger* Abstention

As a general rule, a federal court has a "virtually unflagging obligation" to

adjudicate controversies properly before it.  *See Colo. River Water Conservation Dist. v.*

*United States*, 424 U.S. 800, 817 (1976).  However, the *Younger* abstention doctrine

"forbid[s] federal courts [from] stay[ing] or enjoin[ing] pending state court proceedings."

*Younger v. Harris*, 401 U.S. 37, 41 (1971).  "The goal of *Younger* abstention is to avoid

federal court interference with uniquely state interests such as preservation of these

states' peculiar statutes, schemes, and procedures."  *AmerisourceBergen Corp. v. Roden*,

495 F.3d 1143, 1150 (9th Cir. 2007).

"In civil cases, *Younger* abstention is appropriate only when the state proceedings:

(1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in

enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013); *Gilbertson v. Albright*, 381 F.3d 965, 977-78 (9th Cir. 2004)). "If these 'threshold elements' are met, [courts] then consider whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* (quoting *Gilbertson*, 381 F.3d at 978, 983-84).

The State Court Action is ongoing. The law in this circuit holds that "the date for determining whether *Younger* applies 'is the date the federal action is filed.'" *ReadyLink*, 754 F.3d at 759 (quoting *Gilbertson*, 381 F.3d at 969 n.4). On the date Phillips 66 filed its complaint in this case, it had not yet filed its petition for review in Whatcom County Superior Court. (*Compare* Compl. (filing date of February 5, 2019) *with* Director MTD, Ex. B (filing date of February 6, 2019).) But, for purposes of *Younger*, agency action and subsequent state court review of that action are considered a "unitary process." *Mir v. Kirchmeyer*, No. 12CV2340-GPC-DHB, 2014 WL 2436285, at *11 (S.D. Cal. May 30, 2014) ("[T]he Court adopts the majority approach of treating judicial review of state administrative proceedings as a unitary process that is not to be interrupted by federal court intervention." (citations omitted)); *Howard Jones Invs., LLC v. City of Sacramento*, No. 2:15-CV-954-JAM-KJN, 2016 WL 1599511, at *2 (E.D. Cal. Apr. 21, 2016) (adopting rule articulated in *Mir*); *see also Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27, 35 (1st Cir. 2004) ("*Younger* now has to be read as treating the state process [the administrative proceeding and the possibility for state-court review] . . . as a continuum

from start to finish."); *Majors v. Engelbrecht*, 149 F.3d 709, 713 (7th Cir. 1998) (holding that the state proceeding is ongoing, even assuming that the administrative proceeding is final and state-court review had not begun).[18] Thus, the State Court Action was "ongoing" long before Phillips 66 filed its federal action. (*See* Compl. at 4 (noting that Ms. Honeycutt and Mr. Westergreen's complaints have been pending since 2013).)

Phillips 66's sole argument to the contrary is that a case cannot be "ongoing" when it has been voluntarily stayed by the state court. (Resp. to Director MTD at 9.) There appears to be a split within this circuit as to whether a stayed state court action is "ongoing" for purposes of *Younger*. *Compare Walnut Props., Inc. v. City of Whittier*, 861 F.2d 1102, 1106-07 (9th Cir. 1988) ("The City misconstrues the nature of *Younger* abstention. That doctrine is propelled by concerns of federalism and comity. Those concerns are not present where a state court has stayed its own proceedings pending resolution of the case in a federal forum." (citations omitted)) *with San Remo Hotel v. City & Cty. of S.F.*, 145 F.3d 1095, 1104 (9th Cir. 1998) ("[F]or purposes of the 'ongoing' prong,] [i]t is irrelevant that the state mandamus action was stayed by the stipulation of the parties to allow the federal suit to proceed."). On a closer view of the

_____

[18] The Supreme Court and Ninth Circuit have not squarely adopted this rule; instead, those courts have assumed the rule applied. *See Sprint*, 571 U.S. at 78 ("We will assume without deciding . . . that an administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for *Younger* purposes."); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989) (same); *ReadyLink*, 754 F.3d at 760 (same); *see also San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087, 1093-94 (9th Cir. 2008) (recognizing that the "majority rule" amongst circuits was that administrative proceedings and subsequent state court appeals were unitary proceedings, but declining to resolve the issue). The court joins the *Mir* and *Howard Jones Investments* courts and affirmatively adopts the rule that administrative proceedings and subsequent state court review of those proceedings are unitary proceedings.

caselaw, however, the more recent rule of decision announced in *San Remo Hotel* appears

to have won the day. *See Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d

791, 801 (9th Cir. 2001) (citing *San Remo Hotel* and *Walnut Properties* but applying the

holding announced in *San Remo Hotel* that a "stayed state court proceeding is 'ongoing'

under *Younger*"). To the extent that this split remains live, the court concludes that *San

Remo Hotel* is more persuasive. To hold otherwise would encourage parties to try to

forum shop and game their way around *Younger*'s reach, which would be contrary to the

purpose of *Younger*. *See San Remo Hotel*, 145 F.3d at 1104 ("Because the whole point of

*Younger* abstention is to stop federal interference with state proceedings, it seems

backwards to reject abstention because the state proceedings have been stayed to allow

the federal case to proceed. This is exactly the interference that Younger abstention is

designed to prevent."). Thus, the court rejects Phillips 66's argument that this case is not

"ongoing" because the State Court Action is currently stayed.

The second prong of the *ReadyLink* analysis—whether the state action is a

"quasi-criminal enforcement actions or involve[s] a state's interest in enforcing the orders

and judgments of its courts"—is also met here. In *Sprint*, the Supreme Court noted that

the hallmark of what this circuit calls "quasi-criminal enforcement actions" is that they

are "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging

the state action, for some wrongful act." *Sprint*, 571 U.S. at 79. Additionally, "a state

actor is routinely a party to the state proceeding and often initiates the action," and

"[i]nvestigations are commonly involved, often culminating in the filing of a formal

complaint or charges." *Id.* at 79-80 (citations omitted). The State Court Action fits

squarely within this framework, which suggests that the State Court Action is a quasi-criminal enforcement action. The Department initiated an investigation against Phillips 66 in response to Ms. Honeycutt and Mr. Wintergreen's protected leave complaints. (Compl. at 4-5.) After the conclusion of that investigation, the Director determined that Phillips 66 violated WFCA and issued penalties against Phillips 66. (*Id.*, Ex. C at 7.)

The facts and result from *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.* also suggest that the State Court Action is a quasi-criminal enforcement action. *See* 477 U.S. 619 (1986). In that case, a teacher filed a complaint with a state civil rights agency alleging employment discrimination in violation of state employment laws. *Id.* at 623-24. The agency launched an investigation and ultimately initiated a state administrative proceeding against the school. *Id.* at 624. The school filed a subsequent federal action, but the Supreme Court held that *Younger* barred the federal case.[19] *Id.* at 628. The facts of *Ohio Civil Rights Commission* are analogous to the facts in the State Court Action. In both cases, employees initiated state administrative actions against their employers for violations of state employment law that were adjudicated in state administrative agencies. Given the guidance provided by *Sprint* and the factual similarities between *Ohio Civil Rights Commission* and the State Court Action, the court concludes that the State Court Action is a "quasi-criminal enforcement action."

The third and fourth threshold requirements of the *ReadyLink* test are also met. The court has already concluded that Washington has an important state interest in

---

[19] The *Sprint* Court cited this conclusion as a model example of the kind of civil enforcement action that falls within *Younger*'s reach. *See Sprint*, 571 U.S. at 79.

ensuring that its employees receive sick leave to care for family members. *See supra*
§ III.D. Phillips 66 also had (and continues to have) opportunities to raise its federal
arguments in the State Court Action. Phillips 66 made its ERISA argument in the
Department and, as discussed above, the Department had authority to adjudicate that
issue. *See id.* Phillips 66 can also continue to raise its federal arguments on appeal in the
State Court Action.

Because the four threshold requirements are met, the court next considers whether
this action would have the "practical effect" of enjoining the State Court Action and
whether any exceptions to *Younger* apply. *ReadyLink*, 754 F.3d at 759. A federal action
has the "practical effect" of enjoining the state proceeding where the issues in the federal
action "go to the heart" of the relevant state proceeding. *See Gilbertson*, 381 F.3d at 982.
In *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of
San Jose*, for example, the Ninth Circuit held that a request to enjoin state actors from
enforcing a state statute that was at issue in the parallel state proceeding had the
"practical effect" of enjoining that state proceeding because such an injunction would
have prohibited the state actors from applying the statute and issuing fines against the
federal plaintiff. 546 F.3d 1087, 1095 (9th Cir. 2008). The same result holds in this case.
Although Phillips 66 aims its requested injunction at the Director (as opposed to the State
Court Action) (*see* Compl. at 13) and claims that its requested relief would apply only to
"subsequent administrative proceeding[s]" (Resp. to USW Local MTD at 8), a
declaration from this court that the Plan was an ERISA plan and a permanent injunction
barring the Director from enforcing WFCA against Phillips 66 would squarely resolve the

State Court Action.  The issue in this action does not just "go to the heart" of the State Court Action, *Gilbertson*, 381 F.3d at 982; it is the only remaining issue in the State Court Action.  And, granting Phillips 66's requested relief would prohibit the Department from enforcing WFCA and issuing fines against Phillips 66—the same result that the *San Jose* court prohibited under *Younger*.  *See San Jose*, 546 F.3d at 1095.

The exceptions to *Younger* are narrow and inapplicable here.  An exception to *Younger* exists where there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).  No such circumstances are present here.  Thus, the court concludes that the *Younger* doctrine applies and provides additional grounds for dismissal of this action.

2.    <u>Anti-Injunction Act</u>

The AIA prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.  The AIA is an "absolute prohibition" against enjoining state court proceedings that applies unless one of the three statutory exceptions in § 2283 applies.  *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100 (9th Cir. 2008) ("[The AIA] is not a minor revetment to be easily overcome; it is a fortress which may only be penetrated through the portals that Congress has made available.").

Phillips 66 does not argue that this case falls within one of the § 2283 exceptions to the AIA.  (*See* Resp. to Director MTD at 7-8; Resp. to USW Local MTD at 8-9.)  The court agrees with Phillips 66's implicit concession.  The only AIA exception that could feasibly apply here is the "expressly authorized" exception, but courts in this circuit and others hold that ERISA does not "expressly authorize" state court injunctions absent extraordinary circumstances not present here.[20]  *See, e.g.*, *Knapp*, 963 F. Supp. 2d at 936 ("Because there is no reason why the state courts cannot fairly apply ERISA and there is no express exemption to the [AIA] apparent in the text of the law or clear Congressional intent in the legislative history, the court finds the [AIA] applies to prohibit a federal district court from enjoining a state court under ERISA."); *Trustees of Carpenters' Health & Welfare Tr. Fund of St. Louis v. Darr*, 694 F.3d 803, 807-08 (7th Cir. 2012) ("[W]e agree with the Fourth Circuit that [§ 1132(a)(3)] does not expressly authorize injunctions against state courts unless the state court suit will have the effect of making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA." (emphasis omitted) (citations and internal quotations omitted)).

---

[20] The "in aid of jurisdiction" exception generally does not apply to cases, such as this, where state and federal courts have concurrent jurisdiction.  *See Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987) (citing *Atl. Coast Line*, 398 U.S. at 295). ("The general rule under the 'necessary in aid of its jurisdiction' exception is that where state and federal courts have concurrent jurisdiction over a case, neither court may prevent the parties from simultaneously pursuing claims in both courts.").  The exception allowing a federal court to issue injunctions to "protect or effectuate its judgments"—also known as the "relitigation" exception—applies only where the federal court has previously decided the claims or issues presented in the state court action.  *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988) ("Thus, as *Atlantic Coast Line* makes clear, an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court.").  Neither exception applies here.

Instead of arguing that an AIA exception applies, Phillips 66 offers two arguments that the court has already rejected. First, Phillips 66 claims that the AIA is inapplicable because the State Court Action is currently stayed. (Resp. to Director MTD at 7-8; Resp. to USW Local MTD at 8-9.) The court rejects this argument for the same reasons it rejected it in the context of the *Younger* doctrine. *See supra* § III.E.1. Encouraging litigants to end run around the AIA by petitioning state courts to temporarily stay parallel proceedings would not serve the AIA's central purpose—protecting "the fundamental constitutional independence of the States and their courts." *See Atl. Coast Line*, 398 U.S. at 287.

Second, Phillips 66 argues that it seeks only declaratory relief that the Plan is an ERISA plan and an injunction against the Director for future proceedings, not an injunction against the State Court Action. (Resp. to Director MTD at 7-8; Resp. to USW Local MTD at 8-9.) As the court has already noted, this argument unfairly elevates form over function. *See supra* § III.E.1. Like the *Younger* doctrine, the AIA applies to injunctions and requests for declaratory relief that are formally directed at litigants but would functionally interfere with state court proceedings. *See California v. Randtron*, 284 F.3d 969, 975 (9th Cir. 2002) ("The [AIA] applies although the injunction would be directed at a litigant (here, Randtron) instead of the state court proceeding itself. The [AIA] also applies to declaratory judgments if those judgments have the same effect as an injunction." (citations omitted)); *Monster Beverage Corp. v. Herrera*, 650 F. App'x 344, 346 (9th Cir. 2016) ("[The AIA] prohibits courts from issuing declaratory judgments that interfere with state court proceedings."). Granting the relief Phillips 66 seeks would

effectively end the State Court Action. The AIA prevents the court from awarding that relief. As such, the AIA provides additional grounds to dismiss Phillips 66's claim for failure to state a claim upon which relief can be granted.

**F.    Leave to Amend**

When dismissing a case for failure to state a claim, the district court "should grant leave to amend . . . unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)) (internal quotation marks omitted). Here, the court finds that Phillips 66's complaint cannot be cured. Thus, the court denies leave to amend and dismisses this case with prejudice.

**G.    The Director's Request for Fees**

Pursuant to 29 U.S.C. § 1132(g)(1), the Director requests an award of its attorney's fees. (Director MTD at 13-14.) The decision to award fees under that statute is left to the court's discretion. *See* 29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010) (noting that § 1132(g)(1) vests judges with "broad discretion" to award fees to a party who has achieved "some degree of success on the merits" under ERISA). Assuming that a party establishes that it achieved "some degree of success on the merits," courts weigh five factors in determining whether to exercise discretion and award fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant

legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010) (citations omitted).

Here, although the Director prevailed in this action and Phillips 66 made no effort to oppose the Director's request for fees, the court finds that these factors weigh against awarding fees. Absent concrete evidence to the contrary, the court will not assume that Phillips 66 acted in bad faith by filing simultaneous challenges to the Director's order in this court and Whatcom County Superior Court. While Phillips 66 may be able to satisfy an award of fees, such an award would have minimal deterrent effect given the uniqueness of the procedural history of this case and the issues presented. In this action, the Director is not seeking to vindicate ERISA rights or resolve significant legal questions relating to ERISA; it seeks to have this case dismissed and asks this court not to resolve questions relating ERISA. Finally, the parties presented complex arguments on constitutional issues. Although the Director ultimately prevailed, Phillips 66's arguments were not devoid of merit. On these facts, an award of fees is not warranted.

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS the Director's motion (Dkt. # 4) and GRANTS USW Local's motion (Dkt. # 13). The court DISMISSES Phillips 66's complaint WITH PREJUDICE.

Dated this 10th day of September, 2019.

JAMES L. ROBART
United States District Judge